JAMES HOLDEN, *ET AL.*, PETITIONERS-RESPONDENTS, v.
BOARD OF EDUCATION OF THE CITY OF ELIZABETH,
UNION COUNTY, DEFENDANT-APPELLANT.

Argued December 20, 1965—Decided January 24, 1966.

*Mr. Joseph G. Barbieri* argued the cause for appellant.

*Mr. Joseph A. Hoffman,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General, attorney.)

PER CURIAM. The Board of Education of the City of Elizabeth appealed to the Appellate Division from the determination of the State Board of Education which upheld the action of the Commissioner of Education for reasons given by him. We certified the appeal before argument in the Appellate Division. We affirm the judgment under review upon the same basis. The opinion of the Commissioner of Education reads as follows:

"Petitioners in this case seek the reinstatement in the Elizabeth public schools of their children, who were excluded because they refused to pledge allegiance to the flag of the United States.

A hearing in this matter was conducted by the Assistant Commissioner in charge of Controversies and Disputes at the office of the County Superintendent of Schools in Elizabeth on June 11, 1963.

Petitioner Holden's son, James Gregory Holden, was a pupil in the fourth grade at John Marshall School in Elizabeth during the 1962-63 school year. On February 14 he was suspended from school by the principal for refusing to pledge allegiance to the flag. On March 7 the Board of Education reviewed the suspension and continued it. Peti-

tioner Shumate's son, Harold Shumate, and daughter, Deborah Shumate, were pupils in grades 6 and 4, respectively, of the same school. Harold was suspended on February 18 and Deborah on March 12, for the same reason. Petitioner McClain's son, Jerome, and daughter, Karen, were pupils in grades 6 and 3, respectively, of the same school. Jerome was suspended from school on March 12, and Karen in the month of February, for the same reason. On March 14 a petition seeking reinstatement of his son was filed by petitioner Holden; subsequently, on April 29, an amended petition was filed to include petitioners Shumate and McClain, and requesting the Commissioner to order their children reinstated *pendente lite*. Such an order was issued by the Commissioner on May 10, 1963.

The New Jersey statute relative to the pledge of allegiance by pupils in the public schools is R. S. 18:40–80, as amended by Chapter 212, Laws of 1944, and Chapter 83, Laws of 1954, the pertinent parts of which read as follows:

'Every board of education shall:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) Require the pupils in each school in the district to salute the flag of the United States and repeat on every school day the pledge of allegiance to the flag which shall be as follows: "I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation, under God, indivisible, with liberty and justice for all." The salute and pledge of allegiance shall be rendered with the right hand over the heart; but children who have conscientious scruples against such pledge or salute, or the children of accredited representatives of foreign governments to whom the United States extends diplomatic immunity, will always show full respect to the flag while the pledge is given by merely standing at attention: the boys removing the headdress.'

Petitioners do not deny that their children refused to pledge allegiance to the flag; in fact, they freely state that they instructed their children to refuse to do so. They do assert, and it was not denied by the teachers who observed the children, that these pupils did stand at attention. Petitioners testified that they believe in a religion known as Islam, and that followers of this religion, called Muslims, or sometimes Black Muslims, are taught that their sole allegiance is to Almighty God Allah. They are further taught, they testify, that the flag is but a symbol and that it would be contrary to their teachings to pledge allegiance to any flag, including the flag of Islam. Their religious teachings are based on the Quran, as interpreted to them by one Elijah Muhammad, whom they regarded as their leader and spiritual prophet. They therefore contend that their refusal to permit their children to pledge allegiance to the flag falls within the exemptions provided in R. S. 18:14–80, *supra,* for 'children who have conscientious scruples against such pledge or salute.'

Respondent argues that the exemption for conscientious scruples was never intended to be so broadly construed as to include petitioners' beliefs. Respondent sought to establish through cross-examination of petitioners that their beliefs were as much politically as religiously motivated, and were closely intertwined with their racial aspirations. In effect, respondent challenges petitioners' accuracy in labeling their objections to participation in the pledge of allegiance as conscientious scruples.

The Commissioner does not find it necessary to determine whether the teachings of Islam are religious or political, or both. One need not go outside the history of western civilization to find striking examples of the inextricable fusing of political and religious ideologies. The basic question is whether petitioners in this case can rightly invoke conscientious scruples as their reason for claiming exemption from the pledge of allegiance.

Freedom of religion is a guarantee of the First Amendment of the Constitution of the United States; it is the law of the land, and has frequently been the subject of Supreme Court study and interpretation. With respect to its application to a required flag salute in the public schools, the Supreme Court established the interpretation in its decision in *West Virginia State Board of Education v. Barnette, et al.*, 319 U. S. 624 [63 S. Ct. 1178, 87 L. Ed. 1628] (1943). This decision followed upon a series of decisions in state courts which the Supreme Court refused to review (*Leoles v. Landers, et al.*, 302 U. S. 656 [58 S. Ct. 364, 82 L. Ed. 507] (1937); *Hering, et al. v. State Board of Education*, 303 U. S. 624 [58 S. Ct. 752, 82 L. Ed. 1087] (1938); *Gabrielli v. Knickerbocker, et al.*, 306 U. S. 621 [59 S. Ct. 786, 83 L. Ed. 1026] (1939), a summary decision in *Johnson, et al. v. [Town of] Deerfield, et al.*, 306 U. S. 621 [59 S. Ct. 791, 83 L. Ed. 1027] (1939), and was an outright reversal of its own decision in *Minersville School District, et al. v. Gobitis, et al.*, 310 U. S. 586 [60 S. Ct. 1010, 84 L. Ed. 1375] (1940). In *Barnette* the Court ruled that a requirement by a State Board of Education or a local school board that all pupils salute the flag is unconstitutional since it invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control. (p. 642 [63 S. Ct. p. 1187]) In a concurring opinion, Justices Black and Douglas wrote, at page 644 [63 S. Ct. at page 1188]:

'Neither our domestic tranquility in peace nor our martial effort in war depend on compelling little children to participate in a ceremony which ends in nothing for them but a fear of spiritual condemnation. If, as we think, their fears are groundless, time and reason are the proper antidotes for their errors. The ceremony, when enforced against conscientious objectors, more likely to defeat than to serve its high purpose, is a handy

implement for disguised religious persecution. As such, it is inconsistent with our Constitution's plan and purpose.'

This point of view was, in a sense, anticipated by our own New Jersey Supreme Court in 1942, when the Court refused to sustain the conviction of parents charged with violation of the compulsory school attendance laws when their children had been excluded from school for refusing to salut€ the flag for religious reasons. *In re Lattrechia,* [*Latrecchia*] 128 N. J. L. 472 [Sup. Ct. 1942]. In that decision, the Court quoted from *People v. Sandstrom,* 278 [279] N. Y. 523; 18 N. E. Rep. 2d 840, 847 (Ct. of Appeals of N. Y. 1939), as follows:

'The salute of the flag is a gesture of love and respect —fine when there is real love and respect back of the gesture. The flag is dishonored by a salute by a child in reluctant and terrified obedience to a command of secular authority which clashes with the dictates of conscience. The flag "cherished by all our hearts" should not be soiled by the tears of a little child. The Constitution does not permit, and the Legislature never intended, that the flag should be so soiled and dishonored.'

In the amendments to R. S. 18:14-80 which was enacted in 1944 (Chapter 212, Laws of 1944), exemption from the required salute and pledge of allegiance was extended to include children who have conscientious scruples against such pledge or salute. It is significant to the Commissioner that the Legislature employed the word conscientious rather than religious. The Supreme Court in *West Virginia Board of Education v. Barnette, supra,* decided only a year previously, indicates its feeling that the freedom guaranteed by the First Amendment extends beyond a particular set of religious beliefs to the much broader sphere of intellect and spirit. At page 634 [63 S. Ct. at page 1183], the Court said in its majority opinion:

'Nor does the issue as we see it turn on one's posses-
sion of particular religious views or the sincerity with
which they are held. While religion supplies appellees'
motive for enduring the discomforts of making the issue
in this case, many citizens who do not share these re-
ligious views hold such a compulsory rite to infringe
constitutional liberty of the individual. It is not neces-
sary to inquire whether non-conformist beliefs will ex-
empt from the duty to salute unless we first find power
to make the salute a legal duty.'

and at page 642 [63 S. Ct. at page 1187] the Court said:

'If there is any fixed star in our constitutional constella-
tion, it is that no official, high or petty, can prescribe
what shall be orthodox in politics, nationalism, religion,
or other matters of opinion or force citizens to confess by
word or act their faith therein. If there are any circum-
stances which permit an exception, they do not now
occur to us.'

The use of the term conscientious scruples brings New
Jersey's statute within this broader range.

The dictates of conscience are personal and intimate,
and often unfathomable. While often they are guided by
public morality or the doctrines of religion, they vary in
personal interpretation and application as human beings
themselves differ one from the other. Unless the dictates
of conscience operate so as to present a clear and present
danger to the peace, welfare, and security of the people,
they suffer no testing against human dicta, no matter how
unreasonable they may seem. The Commissioner notes a
recent decision of the U. S. District Court, District of
Arizona, Prescott Division, in the case of *Sheldon, et al. v.
Fallin* [*Fannin*], *et al.*, Civil No. 749, August 29, 1963
[221 F. Supp. 766]. In restraining a board of education
from excluding plaintiffs from school because they refused

to stand during the singing of the national anthem, the Court said in part:

'But all who live under the protection of our Flag are free to believe whatever they may choose to believe and to express that belief, within the limits of free expression, no matter how unfounded or ludicrous the professed belief may seem to others. While implicitly demanding that all freedom of expression be exercised reasonably under the circumstances, the Constitution fortunately does not require that the beliefs or thoughts expressed be reasonable, or wise, or even sensible. The First Amendment thus guarantees to the plaintiffs the right to claim that their objection to standing is based upon religious belief, and the sincerity or reasonableness of this claim may not be examined by this or any other Court. [*United States v. Ballard,* 322 U. S. 78, 86–88 [64 S. Ct. 882, 88 L. Ed. 1148] (1944) ; *Cantwell v.* [*State of*] *Connecticut,* 310 U. S. 296, 306–307 [60 S. Ct. 900, 84 L. Ed. 1213] (1940) ; and see *Reynolds v. United States,* 98 U. S. 145 [25 L. Ed. 244] (1878).]'

The Commissioner regrets that the teachings are such as to cause children not to participate in a common ceremony of respect to the Flag, which is itself the emblem of those freedoms which all Americans are privileged to enjoy. However, he is cognizant of the fact that those freedoms, as contemplated by Federal and State Constitutions and by State law, are broad enough to encompass the beliefs of those who, like the petitioners, claim conscientious scruples.

The Commissioner finds and determines that the children of petitioners have complied with the provisions of R. S. 18 :14–80, *supra,* in claiming exemption from pledging allegiance to the flag on the grounds of conscientious scruples against such a pledge, being willing to stand respectfully at attention during the ceremony, and that re-

spondent has improperly excluded said children from its schools. He directs that his order of May 10, 1963, reinstating the children of petitioners *pendente lite* be and hereby is made permanent."

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For reversal*—None.